versus Napoli, Rodriguez, Tremont, Nunez, Halperin. Good morning, counsel. Good morning. If you'd state your appearance and who you're appearing on behalf of, which appellant? Yes, Your Honor, Courtman Ostrin on behalf of intervener appellant Halperin Pinker. Thank you. Well, I see you've broken up your time with Mr. Rodriguez. You're taking eight. He's taking five. Yes, Your Honor. Okay, fire away. I have a prefatory question. We received at 5.40 p.m. last night what was characterized as a suggestion of mootness. It wasn't a motion to dismiss on the grounds that this court was without appellate jurisdiction to entertain it. It was simply a suggestion of mootness on the potentiality that some documents may be destroyed at least by someone. We heard similar kinds of arguments that we've rejected in terms of taking the case off the calendar and so on and so forth. What is the position of Halperin on this suggestion of mootness? Is this case moot? Our jurisdiction is always at issue in every case. Will or may moot the case? Yes, Your Honor. I certainly don't think that the case is moot right now, and I don't think that the case will become moot. I believe that there is an opportunity for the court to reverse and remand with instructions for the district court to enter an appropriate order. But let me just briefly address Judge Marcus several of the motions that have been filed in the last couple weeks. One, first filed by the appellee, suggesting that the case would become moot because the documents perhaps would ultimately be destroyed if the district court dismissed the 1782 action. But this court, the Eleventh Circuit, has very clear precedent that when documents can be returned that does not therefore moot a case just because a 1782 action is concluded. Then following that, there was another suggestion, and I do just want to advise the court, that we were only made aware of the idea of the destruction of documents I think approximately ten minutes before the second motion to waive oral argument in which the appellee actually suggested that the documents would be destroyed. We were only made aware of that a few minutes before. But I think even if the documents are destroyed, and to be clear we think that they should be destroyed because they were improperly disclosed, I think that this case would not be moot because the district court could do a number of things. What could this court do? The question is whether we can enter any relief to the parties given the nature of the dispute. We have a singular appeal from a determination by the trial court that there was no privilege that obtained either based on attorney climate privilege or based on work product. That's the singular issue that came up. The district judge said there was no privilege. Three firms objected and said there really is a privilege. We want you to rule on it. Now I hear at least some subset of the law firms saying, well, maybe the case is moot. I mean, if they really think the case doesn't belong here, the easiest step would be to file a motion to dismiss voluntarily the appeal based on Rule 42 of FRAP. But we have neither a motion to dismiss for lack of subject matter jurisdiction nor a motion to voluntarily dismiss under FRAP 42. You don't have any of that in front of you. I have nothing other than the suggestion of mootness, and I just am asking your position on the matter. And our position is that this case is not moot. There has been no certification that these documents have been destroyed. Would it matter if they were? Again, Your Honor, I don't think so, because what this court could do is it could find that the district court abused its discretion in allowing these documents to be disclosed. In which case? In which case, Your Honor, in the 1782 action, the district court here abused its discretion by allowing these documents to be disclosed in contravention of the Attorney Work Product Doctrine. In which case they couldn't be disgorged to anyone, period, whether they were destroyed or not? In which case this court could enter an order directing the district court to enter an order that there should be actual evidence of destruction of the documents, that the company should make some attempt to claw back the documents, that the company should be instructed to disclose what third parties have already received these documents, and instructing the parties not to make any derivative use of the documents, including in the underlying litigation in the Eastern District of Missouri. As I know this court is well aware, there is a long, some would call it a tortured history in this case. Litigation that has been pending in the Eastern District of Missouri for over a decade. And the law firms represent clients who are litigation rivals with the companies that are pursuing the 1782 action. That context was all critically important. In the interest of the economy of time, why don't you go right to the merits? Your answer is it's not moot. There's no motion to dismiss on the grounds of mootness. If there was, you would oppose it, period, end of story. Do I have that right? That's right. So tell me about the merits. Why did the district court abuse his considerable discretion in concluding that no privilege obtained, not under work product, not under attorney-client? And again, Your Honor, the reason for that is because all of the evidence adduced in this case weighed in favor of the privilege. There was no contravening evidence. This evidence included, again, an affidavit from Mr. Kariega. He said all of the work that I was doing when these documents were generated were in anticipation of litigation. And he was counsel at that time. The evidence also included an affidavit from Mr. Halpert, who is one of the lawyers who has pursued the cases in the Eastern District of Missouri from the beginning. He swore, attested that the documents contained attorney work product pertaining to hundreds of current clients in the Reid litigation. Third, the item descriptions in the privilege log. They convey that the covered subject matter of the documents, the dates where they were available, and the parties to the documents, all those things militated in favor of application of the privilege. Yes, Your Honor, but you didn't produce any documents, correct? Excuse me, Your Honor? You did not produce any documents? Well, that's right, Judge. We are a third-party privilege holder, but not the actual producer of the documents. That's correct. Yes, your argument that the trial judge abused discretion on the documents that were released based on the other attorney. Other intervener, excuse me. Two interveners. That's right, and I think the answer is no, Your Honor. We are only concerned with that set of documents. They were labeled files 1 through 30 that pertained to Mr. Kariega's time as co-counsel with the firms that are pursuing the Reid litigation, and I'll allow the other intervener to speak to the remaining. You don't dispute. As the intervener, you produced no documents. Exactly right, Judge. I mean, again, it is the holder of the documents who produced the documents, but it is our duty as the holders of this privilege to protect both our clients' interests and our own attorney work product in asserting these privileges. And then just to finish running through the evidence, I think it's very important, and I see that my time is up. No, you may answer. I think it's very important to consider the categories sought by the subpoena itself. The district court, in granting our motion to intervene in this case, observed that on the very face of the subpoena, it seemed to call for documents that would invade the attorney work product doctrine and the attorney client privilege. So, again, those categories include all the documents that reflect Mr. Kariega's role in recruiting plaintiffs and communications from other attorneys related to the recruitment of plaintiffs. What we are asking the court to recognize is that in this unique context, the context of a 1782 action where there are litigation rivals in a case that has been pending for a long time, this is exactly what the court advised in the case Glock against Glock that district courts should be carefully aware of. The district court needed to take some additional step to assure itself that the privilege would not be violated. It could have done any number of things, and it did not. So the district court was required to examine 300 documents itself in order to go through each one, one by one, and determine whether or not the privilege applies? Judge Wilson, I certainly don't think that the district court had to do that. It certainly was available, and in-camera review is always possible. But here are some of the other things, Your Honor, that I think the district court could have done. It could have held a hearing. There's a lot of case law out there that says in these sorts of circumstances that courts are not required to conduct a hearing. Again, and Judge Wilson, I'm not suggesting— It's within the sound discretion of the district court as to whether to conduct a hearing, and it seems to me what your client wants the court to do is to do its work for it. No, absolutely not, Your Honor. And I think what Mr. Halpern did was submit a privilege log, submit evidence in the form of two affidavits to try to convey that these documents were covered by the applicable privileges. Yeah, and the affidavit just says it's just a blanket assertion. Everything Mr. Corrego did could be in anticipation of litigation. Mr. Kyriega drafted that affidavit, but there was also Mr. Halpern's affidavit, Judge Wilson, in which he said that he's reviewed these documents. He's reviewed documents 1 through 30. They all contain attorney work product, or at least many of them did, as to specific and still pending clients. But the district court didn't have to hold a hearing. It didn't necessarily have to conduct an in-camera review. At a minimum, once Halpern was an intervener to the case, it could have allowed Halpern the opportunity to amend its privilege log, or it could have entered a confidentiality order that said, I'm going to allow the 1782 petitioner to review these documents, but they can't be used beyond the petitioner's review or sending the documents to the ongoing criminal investigation in Peru. It could have entered that kind of an order. Any of these options were available to the district court, and it's the fact that it took advantage of none of them. It took no further steps in contravention of all the proper evidence that makes this an abuse of discretion. We ask this court to reverse. Both the mass court judge and district court judge did a lot of digging in this case. When I looked at it, they went beyond what is usually required of the district court, and the burden is on the interveners, was it not? The burden is on the intervener, Judge Jones, to initially assert the privilege. But I think once that privilege has been initially asserted, and I think here there was evidence to do that, the burden should have shifted as to the attorney work product protection, which applied to the vast majority of these documents, to the 1782 petitioners to either show some sort of crime fraud exception or to show substantial need for the documents and no other way to get them. Thank you. Thank you, counsel. And so we're clear, Mr. Van Ostrin, you'd reserve two minutes for rebuttal. Good morning, Your Honor. Good morning, Mr. Rodriguez. Frank R. Rodriguez on behalf of Interveners, Rodriguez, Tremont, and Noonan. Let's begin with the 540 submission last night. It's not a motion to dismiss. It's a suggestion of mootness. What's your view on all of this? Your Honor, just the background, this matter, the 1782 action was filed, we contend, as an end run over discovery orders of a federal district judge in the Eastern District of Missouri. The petitioner's conduct in this case violated orders by Judge Sippel, the judge in the Eastern District of Missouri. All of that may be relevant, but how does that bear on mootness? Is this case moot? Is that what you're saying? Well, it is in this, and if I may explain, Your Honor. Please. Okay. What occurred here is we filed motions for protective orders as third-party interveners, and we asserted privileges. The person magistrate in the federal district court denied our motion for protective order, our assertion of privileges. We appealed to the magistrate. Well, we filed a motion for reconsideration, I believe. We appealed to the federal district court. We appealed to this court, and we filed motions to stay pending the resolution of this matter before this court. All those were denied. So the certain documents, about 300 documents, were produced by Mr. Cariega, a person that was functioning as a paralegal in this mass torts case where the petitioners, FLEs, have exposure in the hundreds of millions of dollars. So at this point, where we are now, the horse is out of the barn, if you will. The documents, I mean, there are some issues that aren't relevant to this proceeding that we'll take up regarding disqualification and so forth. But what can this court, what relief can this court provide at this point? And we think the only thing that the court can provide is to get our documents back and have them destroyed. Now, we've had communication back and forth with petitioner at police counsel, and they're saying, well, you know, we're in the process of destroying them. And we're saying, well, will you certify? Yes, we'll certify, but we're not done yet because we've got to make sure they're destroyed. Let me ask you the question this way, Mr. Rodriguez. Theoretically, there are two possible ways for you as an intervener to get this case out of this court at this time. Right. One, you can move to dismiss for lack of appellate jurisdiction because it's moot. I don't think, just speaking for myself, you're at a point where it really is moot. Perhaps it might become moot, but it isn't at this point. Or second, if you want this case out of this court, you're the appellant. All you have to do is move under Rule 42 of the Federal Rules of Appellate Procedure and voluntarily dismiss your appeal. Why don't you do that if you want this case out of this court? We may. You may do a lot of things, but you're here today. I am. I am, Your Honor. Do you want to dismiss your appeal? It may be the case. No, not it may. Is that what you want to do? Do you want to dismiss the appeal on behalf of your intervening client? I don't want to be charged with any cost, and I want to have the ability to charge costs. Well, that's a totally different question. Well, that's You can't play ducks and drakes with the court. If we have jurisdiction, we'll decide the matter. If you want to voluntarily dismiss the case, I have no doubt we will happily accommodate you and dismiss your appeal. That doesn't involve your colleague who says he wants a ruling on the merits. And forgive the ignorance, Your Honor. I know that's not terribly relevant to the court, but I don't do appeals very often, and I'm not familiar enough to – I'm not well-versed enough. I should be. I should be. But yet The only reason I ask you the question is I get the sense from the series of applications and motions that have been filed in this court, which to date have been denied, that the only thing you want to do is get as far and as fast away from this court as you can get. Correct. That's your prerogative, but the easiest way to accomplish that task is simply to voluntarily dismiss your appeal. You could move under 42 of the Federal Rules of Appellate Procedure and say, Judge, we do not wish to proceed any further with our appeal at this time. And then we'll have to decide whether to grant your motion to dismiss. Speaking for myself, I would grant it in a New York second. I have no – Your Honor, I have no interest in proceeding with this appeal. Do you want to move to dismiss your appeal? But I want to be able to charge costs against – Well, you can do what you want. The question is whether you want to dismiss the appeal. What will happen with costs would be an issue that would have to be taken up later. Yes. You don't get a sneak preview is what I'm really telling you about an issue that's not before the court. We don't generally render advisory opinions, whether it has to do with fees, costs, or anything else. But you're free to move under the rules to dismiss if that's what you want to do. That's what I want to do. So you are moving to dismiss your appeal? Yes. All right. Then you need not argue it until we're going to hear from what your colleague has to say, whether he has any objection to the motion. And if he doesn't, I don't think that would be a difficult task to accomplish. So I didn't mean to shut you down from arguing the merits. But if you want to get the case out of the court, if we have jurisdiction, because it isn't really quite moot, then the one direct route to do it is to move under the federal rules of appellate procedure to voluntarily dismiss your appeal. You understand that's what you can do. I hear you to be saying that is what you want to do. We'll hear what your colleague has to say. I don't want to cut you off, so you tell me. Yes. Based on the representations of counsel, I'm talking about petitioner at police counsel, who represented that they are in the process, as of a day or two ago, the last time we heard, in the process of destroying the documents, that they have filed a motion to dismiss a 1782 action, which was denied because the court didn't feel it had jurisdiction. The only thing before us is your appeal. I understand. I understand. And, yes, based on the representations of counsel, that they're in the process of destroying the documents, that they're prepared to certify the destruction of the documents, and I have no problem dismissing the appeal based on those representations. You have to move to dismiss the appeal. I move to dismiss the appeal. All right. Thank you, counsel. Mr. Kuntz, where are we on this lawsuit? Help me out. Good morning, Your Honors. We have, as I understand it, just on this issue of mootness or voluntary dismissal, we have one group of appellants who say they want out. They want to voluntarily dismiss this appeal. They've made a suggestion of mootness, although they haven't formally moved to dismiss on the grounds that we lack jurisdiction. Is there any reason why you would oppose Mr. Rodriguez's application to voluntarily dismiss the appeal under FRAP 42? We do not oppose that motion, Your Honor. So that would dispose of one group of lawyers in this case? Yes, Your Honor. Again, under 42, just so everybody is clear, Mr. Rodriguez, just bear with me. This is a dismissal upon an application of an appellant in the party. A court is free to grant it under 42B1 or 42B2. He's moving to dismiss the appeal. He's doing it orally, but he wants to end the lawsuit in this court. Whatever happens in Missouri is another question. Whatever happens in the district court is another question. He simply doesn't wish to proceed here. Any objection? No objection, Your Honor. All right. I have polled my colleagues, and we are in agreement, Mr. Rodriguez, and we'll put out an appropriate order that your Rule 42 motion to dismiss is granted. You are out of the lawsuit. That leaves only Halperin? Correct, Your Honor. Okay. Halperin does not want to leave. He wants a ruling on the merits. He does, Your Honor. So let's go to the merits. Your Honor, the company's come before you today in a unique, unenviable, and nearly impossible position. On October 29th of this year, Judge Rodney Sippel of the Eastern District of Missouri, where the company's our defendants in two large consolidated mass tort actions, issued an order that severely constrains what the company's can say here this morning. In short summary, despite having denied in January 2023 an anti-suit injunction that would have closed down our 1782 petitions here, Judge Sippel thereafter issued various orders that had the effect of limiting these activities. On October 29th, he issued an order that prohibits the companies from any attempt to discover the recruitment-related documents or practices, the internal process, or work product of plaintiff's counsel. The order prohibits the companies from seeking any potential attorney-client privilege or work product information that applies equally to active and dismissed plaintiffs. It prohibits the companies from any attempt to overcome the assertions of attorney-client or work product privilege by the appellant intervenors. Moreover, the October 29th order states with certainty that any such actions, quote, will be met with sanctions, including the possibility of striking defendants' pleadings in the matter and proceeding with trials solely on damages, end quote. To be clear, the companies respectfully contend that Judge Sippel's order, which came more than a year after the orders on appeal by this court, which came more than 250 days after our answer brief was filed, we think that order is in error on facts and the law, but it is the order and we are bound to proceed with regard to it. The companies, as a result, your honors, find themselves at the extreme end of Judge Leonard Hand's carrel-towing company calculus. The magnitude of potential injury for the companies to face those sanctions in those mass tort litigations is as great as it could possibly be in a civil matter. The possibility of that potential injury seems high and is certainly not de minimis given that the October 29th order promises sanction. The burden on the companies, therefore, and on me this morning, Judge, is such that they immediately abandoned the 1782 and moved to dismiss it, a motion which was opposed by the helper and intervener despite years of fighting us on the 1782 production we sought for the Peruvian prosecutors. We are constrained to decline to seek any further production. We are declined, we are prohibited, your honor, in our belief from speaking this morning in favor of affirmance of the orders of the district court that are on appeal here because that would clearly violate Judge Sippel's order to seek in any way this privileged information. Thus, my obligations and my instructions are such that I am not able, although I stand before you today, to speak in favor of affirmance. Hadn't you submitted a brief in favor of affirming the district court? We have, your honor, and we do not withdraw the brief. We cannot conceive that even the October 29th order could have a retrospective effect on an answer brief filed in good faith 250 days before that order came out. But the order is clear that from October 29th, the companies, and I stand here as their representative, are prohibited from any attempt to circumvent plaintiff's ability to assert attorney-client and work-product privileges and that such an attempt will be met with sanctions. So what the companies have to do, your honors, is to weigh the 1782 proceeding undertaken to gather evidence in support of their criminal complaint in Peru with regard to alleged fraud there. And they have to weigh that action against the existential threat in two exceedingly large, I do not contest counsel's characterization of the scale of these two mass court litigations. And for prudential reasons, they have chosen to move to dismiss the 1782. It bears noting that we sought a stipulation of dismissal. I believe we're under Rule 41 in the Rules of Civil Procedure. We sought to stipulate a dismissal. The Rodriguez intervenors agreed. Mr. Cariaga, the 1782 petitioner, the 1782 target, agreed. The Halpern intervenor did not agree. Accordingly, we were required to file a motion, which the Halpern intervenors contested. And just Monday evening, the district court magistrate, Judge Lewis, to whom this matter has been devolved, ruled that because your honors have jurisdiction that she was unable to- Until or unless we ruled. Right, exactly, Judge. And so for the moment, although we have said we are moving to dismiss the 1782, although we have undertaken to dispose of the paltry few documents we received in the three years of this, we stand here before you. And I can't really speak to the affirmance except to say, yes, your honor, we did file an answer brief. And I believe that the court has before it everything that it would need to rule with regard to whether Judges Lewis and Leonard abused their discretion in ruling that there was no demonstration of attorney-client privilege or of attorney-work-product privilege. Let me just ask you a few questions. I will answer if I can, your honor, of course. Mr. Halperin is going forward with his appeal in this court. He says the district court abused its discretion. You filed a response brief, and in it you said in the red brief, the district court did not abuse its discretion in ruling that the work-product doctrine did not apply to the appellant's documents. You conclude on the last page of your brief with these words, for these good reasons, which you outline in 25 pages, this court should deny this appeal and affirm the district court's orders. You're not backing off this brief, are you? Your honor, we are not withdrawing the brief. Okay, that's what I'm asking. So the record, so that I have it clearly from your side, is this court still is obliged to address the appeal by Halperin about whether there was an abuse of discretion. That is a live case of controversy, and this appellate court has appellate jurisdiction to answer it. Your honor, I think that in technical terms, you do have appellate jurisdiction to answer it for the reasons that your honor outlined in speaking with Mr. Rodriguez. That being said, your honor, there is nothing left in controversy. We've moved to dismiss the 1782 proceeding in toto, and the only impediment to that at this point is this court's continued jurisdiction in Mr. Halperin's opposition. Let me put the question slightly differently. Do you want a ruling from this court? I believe this court is bound to rule unless and until Halperin withdraws, or you decide that the matter is moot. With regard to mootness, I wanted to just speak a little to that, your honor. Is the case moot? I think in practical terms, it is. Jurisprudentially, your honor, it is still before you. But in practical terms, there is no controversy left. The documents, few though they are, we've undertaken to dispose of them. That's not like it used to be where you could go to the back room and get the box of documents and put them in the shredder. Because things get put onto computers, it's a process to be able to certify them. The 1782 has been moved to be dismissed. There will shortly be nothing for Halperin to assert a privilege over of any sort. There are no documents. Don't they still have their own documents? They have them. Judge, the Halperin firm never produced any documents in this case. These are not their documents. These are Mr. Cariaga's documents of the 1782 target. The documents in question, the parties intervened to be able to assert privileges either on behalf of their absent former unnamed clients in terms of attorney-client privilege, or as the district court noted, their continued interest as the attorneys in asserting a work product doctrine. It's not really privilege over those documents. But it was about production by Mr. Cariaga and whether they'd be permitted to intervene to assert those privileges. There are no documents from the Halperin. Your answer is it's not yet moot. It's probable it will become moot at some point down the road. My answer is that it is not yet legally moot. It should very soon become legally moot. And it is practically, it is from a practical standpoint, moot. So do you think we should dismiss what's left of the appeal on the grounds of mootness? I think you have to. Nobody's moved for mootness. Nobody has filed a motion to dismiss. We had a suggestion from Mr. Rodriguez, but he said the easiest way out of the case is simply to voluntarily dismiss, which we've granted. Your Honor. Halperin says it isn't moot. Had we received an order dismissing the 1782 proceeding, we would have in a New York second. But you didn't. But we haven't yet received that. So we have not moved to dismiss for mootness because jurisprudentially it's not moot. Correct, Your Honor. Thanks very much. Thank you, Your Honor. Mr. Halperin. Let me begin by asking anything further on the issue of mootness. Yes, Your Honor. Absolutely. Earlier in this case in the district court, once this appeal was pending, we moved the district court to stay the case pending the outcome of this appeal so that no documents had to be turned over if ultimately the court found that they should have been privileged. The appellees contested that motion for stay. They said, no, this case should continue. They quoted a case to the district court that the district court then quoted back in its order. This is a case from the Southern District of New York, and they offered this selection from it. The disclosure of any privileged information could be remedied through multiple avenues, including, A, redaction of the portions of documents, et cetera, et cetera, or, B, an order that the opposing party is not permitted to use those documents in substantive motions or at trial. That's exactly the kind of relief that the district court can still issue. So this case is not moot, and this case will not become moot. I hate to speak in hypotheticals. We've devoted a lot of the argument to that today. But even if these documents are destroyed and the appellees certify as much, this case is not moot. This court can remand and ask the lower court to... So if, in fact, we were to agree with you, and if we were to say the district court abuses discretion either as to work product or as to attorney-client privilege, either in whole or in part, what relief could we offer? Your Honor, I think the relief from this court should be as straightforward as explaining that the district court abuses discretion and ordering it to enter an order applying the proper standard for application of the privilege. The district court, though, would also have the ability to do a number of other things once the case is returned to it. What could it do? What would be included in the universe of options? Absolutely, Your Honor. I think it could do a number of things pursuant to its inherent powers to control the litigation in front of it. It could ask the companies to certify to whom they have already disclosed what third parties have received these documents. The district court could again ask for certification of the destruction. The court could enter an order limiting any derivative use of these improperly disclosed arguments, including in the cases, excuse me, in Missouri. So there are a host of things that the court could say. There are real and specific consequences to how we rule on the appeal. Yes, that's exactly right, Your Honor, and that's why, among other reasons, that this case isn't moved. Anything further you want to say on the merits? No. He rested on his briefs. He said, I don't wish to say anything orally beyond what's in the brief. I understand that. And again, for all the reasons that are in our briefs and for all the reasons we've articulated today, the district court did abuse its discretion. We ask this court to reverse. Thank you much. Thank you. Thank you all. We will, Mr. Rodriguez, so we're clear, shortly enter an order granting your oral application to dismiss your appeal. So you will be out of the case. Thank you. This court is adjourned until 9 AM tomorrow morning.